UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Rumi LLC**, <br>             Plaintiff, <br><br> v. <br><br> **Burtak Irtanki,** *et al.*, <br>             Defendants. | Case No. 23-cv-01741 (CRC) |

## OPINION AND ORDER

In 2022, Plaintiff Rumi LLC ("Rumi") wired nearly half a million dollars to Defendant Burak Irtanki for his company, Optimal Holdings, Inc. ("Optimal"), to construct a new restaurant in Washington, District of Columbia. Irtanki, however, repeatedly delayed construction, ultimately abandoning the project and ceasing communication with Rumi. Rumi then filed this lawsuit against Irtanki and his mother-turned-business partner, Mihirban Tuncay, bringing fraud and negligent misrepresentation claims, among others. Even though Irtanki and Tuncay have been served, neither has responded to the complaint, and the Clerk has entered a default against Irtanki.

In a prior opinion, the Court denied Rumi's motion for default judgment without prejudice, noting that Rumi had failed to brief several critical issues. Rumi's second motion for default judgment fares no better than the first. Because Rumi has not obtained a default against Tuncay nor moved for a default judgment against her, while expressing its intention to do so, it is premature for the Court to consider the motion against Irtanki. To avoid the possibility of inconsistent judgments, the Court will again deny the motion without prejudice and permit Rumi

0

one last chance to file motions for default judgment against both defendants after obtaining a default against Tuncay.

I.  **Background**

The Court presumes familiarity with its prior opinion describing the procedural and legal background of this case, so it provides only a summary of the relevant details here. See Op. & Order, ECF No. 16 at 1–5.

According to the complaint, in 2021, Rumi began a project to open a restaurant in northwest D.C.  Compl. ¶ 10.  After securing a lease, Rumi met with Irtanki to discuss construction of the restaurant.  Id. ¶ 14.  Irtanki "held himself out . . . as a general contractor" and told Rumi's representatives that he had completed several similar projects in the area.  Id. ¶¶ 15, 44–45.  Accordingly, Rumi signed a contract with Optimal, a company controlled by Defendants and purportedly headquartered in D.C.  Id. ¶¶ 21, 26–27.  Unbeknownst to Rumi, Optimal did not register in D.C. or possess a General Contractor license until several weeks after the contract was signed.  Id. ¶¶ 38–41.

After Irtanki sent Rumi an allegedly fake proof of bond, Irtanki and Tuncay instructed one of Rumi's officers to convey a check to them in the amount of $186,000.  Id. ¶¶ 22, 36.  Rumi did so in January 2022.  Id.  Two months later, Rumi wired a second payment of $290,000 to Irtanki.  Id. ¶ 23.  And over the next few months, Rumi tendered $22,000 in additional payments, for a total of $498,000.  Id. ¶ 24.  Irtanki and Tuncay also met with one of Rumi's officers in in October 2022 and showed him construction materials that had purportedly been purchased for the restaurant.  Id. ¶¶ 80–82.

Despite accepting these large sums from Rumi and claiming to have bought construction materials, Optimal has performed no work on the restaurant to date nor met any deadlines set

1

forth in the contract.  Id. ¶¶ 72–73.  And in October 2022, Irtanki stopped substantively responding to Rumi's requests for updates on the project altogether.  Id. ¶ 74.

So, in June 2023, Rumi brought this lawsuit against Irtanki and Tuncay, alleging fraud, negligent misrepresentation, civil conspiracy, negligence, and conversion.  Id. ¶¶ 88–135, 150–64.  Rumi sought a declaratory judgment, replevin, and damages.  Id. ¶¶ 136–49, 165–80.  Although both defendants were served, neither responded to the complaint.  Rumi then sought and received a default from the Clerk against Irtanki.  Military Aff., ECF No. 10 at 1–2; Entry of Default, ECF No. 11 at 1–2.  Tuncay remains in the case, but no default has been registered or entered against her.

In its prior opinion, the Court denied Rumi's motion for default judgment against Irtanki without prejudice, identifying several outstanding issues that prevented the Court from granting the motion, including the effect of an arbitration clause in the contract between Rumi and Optimal, the appropriate cause of action, and Rumi's justification for the sizeable damages requested.  Op. & Order at 5–6.  And, as particularly relevant here, the Court instructed Rumi to clarify its intentions as to Tuncay, Irtanki's joint tortfeasor and the other defendant in this case.  Id. at 6–7.  The Court explained that "courts typically refuse to enter default judgment against one defendant while a codefendant remains in the mix to avoid the possibility of inconsistent rulings for joint tortfeasors."  Id.

Rumi has now filed a second motion for default judgment that attempts to address the Court's concerns.  Second Mot. for Default J., ECF No. 18 at 9–22.  Because Rumi indicates that it plans to file a motion for default judgment against Tuncay but still has not yet done so, the Court will again deny its motion without prejudice to avoid the risk of inconsistent judgments.

2

## II.     Legal Standards

Obtaining a default judgment is a two-step process.  See Boland v. Cacper Constr. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015).  A plaintiff must first request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The Court then decides whether default judgment is warranted.  Fed. R. Civ. P. 55(b).  Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (cleaned up).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  Id.  After establishing liability, the Court makes an independent evaluation of the damages award, which it has "considerable latitude" to determine.  Id. (citing Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993)).  The Court may hold a hearing if necessary or can rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims.  Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (cleaned up).

## III.    Analysis

In its prior opinion, the Court observed that default judgments are generally not entered against one defendant while a codefendant remains in the case to avoid the possibility of inconsistent rulings for joint tortfeasors.  Op. & Order at 6–7.  Accordingly, the Court directed Rumi to "clarify whether the Court should dismiss the case against Tuncay if it were to enter default judgment against Irtanki."  Id. at 7.  In its second motion for default judgment, Rumi states that it "intended and still does intend to file a subsequent motion for default judgement against Tuncay."  Second Mot. for Default J. at 10.  Nowhere does Rumi respond to the Court's concern about entering inconsistent rulings, however.

3

"If one of several defendants . . . make[s] default, . . . no final decree on the merits [can be issued] until the case is disposed of with regard to the other defendants." Frow v. De La Vega, 82 U.S. 552, 554 (1872); see 10A Wright & Miller's Federal Practice & Procedure § 2690 (4th ed. 2025) ("[W]hen one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until . . . all defendants have defaulted."). The D.C. Circuit has explained that the Frow principle guards against potential "inconsistent adjudications as to joint liability." Carter v. District of Columbia., 795 F.2d 116, 137 (D.C. Cir. 1986) (applying Frow when it "was necessary that judgment be entered against all of the defendants in order to be effective" (citation omitted)).

Here, Rumi's complaint broadly alleges that Irtanki and Tuncay were jointly liable on four of the seven counts, including the fraud and negligent misrepresentation claims on which Rumi now seeks a default judgment against Irtanki. Compl. ¶¶ 91–109, 112–126, 129–135, 152–157. The factual allegations in the complaint identify Tuncay as jointly participating in at least some of the allegedly fraudulent behavior. For instance, Rumi alleges that Tuncay and Irtanki together instructed one of its officers to convey the first payment of $186,000 to them during a January 2022 meeting attended by both. Id. ¶¶ 22, 36. Tuncay, along with Irtanki, is also said to have attended a meeting that October during which they allegedly "showed [Rumi] numerous . . . construction materials and represented [that] such materials were purchased for the Project." Id. ¶¶ 80–82.

Rumi therefore cannot obtain a default judgment against Irtanki before a default has been entered against Tuncay. Rule 55(a) requires a plaintiff to show by affidavit or otherwise that a party has failed to plead in order for the Clerk to enter a default against them. Fed. R. Civ. P. 55(a). Rumi never applied to the Clerk for a default against Tuncay and as such, no default has

been entered against her, even though she has not answered the complaint. If the Court were to grant Rumi's motion for default judgment, therefore, it would risk separate and incongruous judgments. For instance, if the Court were to enter judgment against Irtanki for fraud based on soliciting the first payment at issue here, Tuncay would necessarily be liable, since both Tuncay and Irtanki allegedly "instructed" Rumi to convey a check to them in the amount of $186,000 and then participated in "divert[ing]" this payment. Compl. ¶ 22, 120–22, 129.

Rumi responds that Tuncay's "conduct towards Plaintiff was different from Irtanki as it was also discrete." Second Mot. for Default J. at 9. The Court recognizes the possibility that it could find Irtanki, and not Tuncay, liable for some counts because only Irtanki is implicated in the majority of the allegedly improper conduct. The D.C. Circuit has clarified that Frow applies when "the theory of recovery requires that all defendants be found liable if any one of them is liable—and when the relief sought can only be effective if judgment is granted against all." Whelan v. Abell, 953 F.2d 663, 674–75 (D.C. Cir. 1992). Nevertheless, while granting default judgment here may not go so far as to "run afoul of 'settled law,'" it still would be inappropriate because granting judgment to Irtanki "could indirectly establish liability as to" Tuncay as well. Zapata v. B. Coleman Flooring Installation, LLC, No. 18-cv-1134 (TJK), 2019 WL 13399854, at *1 (D.D.C. Dec. 5, 2019).

On the other hand, the Court observes that unlike in many of the cases applying Frow, Tuncay has not defended herself on the merits. The lack of a default entered against her is therefore more of a technical problem, as it is unlikely at this stage that Tuncay will ever enter the case and raise the specter of an inconsistent judgment. Nevertheless, Rumi represents in its second motion for default judgment that it "had intended and still does intend to file a subsequent motion for default judgement against Tuncay." Second Mot. for Default J. at 10. Thus, it would

5

be more efficient for the Court to consider default judgment motions against the joint tortfeasors together.  See Fed. R. Civ. P. 54(b) (indicating that courts may delay final judgment if there is "just reason for delay."); see also In re Uranium Antitrust Litig., 473 F. Supp. 382, 389 (N.D. Ill. 1979) (recognizing the importance of avoiding "premature decision-making" in default judgment cases).  It would be a different story if Rumi were to dismiss Tuncay, as the Court noted in its prior opinion.  Op. & Order at 6–7.

Lastly, Rumi's conflicting characterizations of Tuncay's role in the fraudulent activity confirms the Court's conclusion.  Rumi both identifies Irtanki as "the main actor" in the scheme, Second Mot. for Default J. at 10, and then in the same breath argues that Tuncay "was the tail wagging the dog."  Id.  Given these inconsistencies, the Court views it as prudent to consider the motions for default judgment against the defendants together.

The Court will, accordingly, deny the motion for default judgment without prejudice to renewal after Rumi has obtained a default against Tuncay and filed motions for default judgment against both defendants (or, alternatively, dismissed Tuncay as a defendant).[1]

---

[1] The Court will also deny without prejudice Rumi's Application in the Alternative for a Stay Pending Arbitration, ECF No. 19, as the Court has not yet addressed the arbitration issue in this matter.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [ECF No. 18] Rumi's Second Motion for Default Judgment is **DENIED** without prejudice; it is further

**ORDERED** that Rumi shall file a renewed motion for default judgment by August 13, 2025.

**SO ORDERED**.

CHRISTOPHER R. COOPER<br>
United States District Judge

Date: July 14, 2025